IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SYDNEY ALVIS BROOKS,  }
                     }
    Plaintiff,       }
                     }
v.                   }   Case. No.: 4:07-CV-0891-JHH
                     }
MICHAEL J. ASTRUE,   }
Commissioner of Social Security,  }
                     }
    Defendant.       }

### MEMORANDUM OPINION

Plaintiff, Sidney Alvis Brooks, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

I.    **Proceedings Below**

Plaintiff filed his application for DIB on October 30, 2003, alleging a disability onset date of April 30, 2001. (R. 48-50). Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2001. (R. 16).

On January 20, 2004, Plaintiff's application was denied. (R. 23-29). On March 23, 2004, Plaintiff filed an untimely request for a hearing, but his request was granted because he demonstrated good cause for the late filing. (R. 32). Thus, a hearing before an Administrative Law Judge ("ALJ")

was held on March 23, 2006, in Gadsden, Alabama. (R. 32, 295-319). Both Plaintiff and Vocational Expert Dr. Julia A. Russell testified at the hearing. (R. 295-319).

In the November 6, 2006 decision, the ALJ determined that Plaintiff was not eligible for DIB because he was not under a "disability," as defined by the Act, at any time from April 30, 2001, his alleged onset date, through December 31, 2001, the date last insured. (R. 21, No. 5). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council and submitted additional evidence that was incorporated into the record on review. (R. 8-12). After the Appeals Council denied Plaintiff's request for review on November 2, 2006, (R. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of Plaintiff's alleged onset of disability, he was forty-five years old and had a high school equivalent education. (R. 297-98, 303). Plaintiff's past relevant work as a painter, sandblaster, roofer, and siding applicator were described by the vocational expert as being medium to heavy in exertion. (R. 318). According to Plaintiff, he has been unable to engage in substantial gainful activity since April 30, 2001, when he became unable to work due to back pain (including low back pain and cervical pain with radiculopathy), myofascial pain syndrom, cephalagia (headache), osteoarthritis, and depression. (Doc. # 7, at 6; Doc. # 9, at 1-2).

At the hearing, Plaintiff described that he "worked in pain every day" after having broken his back in three places in 1979. (R. 309). In 1996 or 1997, he sought help from a pain management doctor because he "drank probably a fifth, to a fifth-and-a-half of liquor a day." (R. 310-11). Plaintiff testified that although he is married, he does not live with his wife. (R. 303). Plaintiff lives part of the time by himself, and part of the time with his sister, father, or daughter. (R. 303).

2

## II.     ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

3

The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2001. (R. 18, No. 1). Plaintiff did not engage in substantial gainful activity during the period of time from his alleged onset of disability on April 30, 2001, through his date last insured. (R. 19, No. 2). Although the ALJ found that Plaintiff did have the medically determinable impairment of mild asbestosis through the date last insured, he nevertheless determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 18-19, No. 3). According to the ALJ, Plaintiff's subjective complaints concerning his alleged impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 20-21). Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period. (R. 21, at 5).

## III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 7, at 10). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ improperly rejected Plaintiff's complaints of pain; and (2) the ALJ failed to give proper weight to Plaintiff's treating physician Dr. Odeanne Connor and consultative physician Dr. David Wilson, which led to his failure to consider Plaintiff's musculoskeletal condition and depression as "severe" impairments.

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ properly

discounted Plaintiff's subjective complaints and appropriately weighted the opinions of Plaintiff's physicians when he found that Plaintiff's musculoskeletal condition and depression were not "severe" impairments, at least during the limited time period relevant to Plaintiff's DIB claim.

Indeed, it is the limited time period relevant to this disability inquiry that is virtually dispositive of Plaintiff's claim. As the ALJ recognized, the medical record *as a whole* may well establish that, at some point during the years of treatment for Plaintiff's conditions, he became "disabled" as defined by the Act.[1] However, that is not the appropriate inquiry. As Plaintiff concedes, the ALJ's determination - and this court's review thereof- is limited to the medical evidence relevant to whether Plaintiff was "disabled" *prior to his December 31, 2001, last insured date*. (Doc. # 7, at 4). *See also* 42 U.S.C. § 423(a), (c); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). This court agrees with the ALJ that the record is simply not sufficient to establish disability during that time period. (R. 315).[2] The court's analysis of Plaintiff's arguments for remand and/or reversal follows.

A. **Evaluation of Plaintiff's Subjective Complaints**

Plaintiff first alleges that in determining his ability to work, the ALJ failed to appropriately evaluate his alleged pain and subjective symptoms. (Doc. # 7, at 3-7). The Act and its related

---

[1] The ALJ even went so far as to hypothesize that if it were permissible for him to consider Plaintiff's disability status *as of the date of the March 23, 2006 hearing*, he would likely find Plaintiff to be disabled under the Act. (R. 301).

[2] The ALJ even solicited additional evidence from Plaintiff in an attempt to bolster his disability record. At the March 2006 hearing, the ALJ specifically requested, and later received, additional medical evidence related to the period of covered quarters. As the ALJ's opinion notes, "[t]his record was held open for 90 days to allow the receipt of additional records for the period before December 30, 2001. All the records submitted have been reviewed, including the post-hearing [records] . . . , but these new records do not change the above analysis." (R. 21).

regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly

applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the Eleventh Circuit's "pain standard" for evaluating Plaintiff's subjective complaints. Here, the ALJ cited 20 C.F.R. § 404.1529 and considered Plaintiff's symptoms and subjective complaints in light of the standards outlined therein. (R. 19-20). The ALJ determined that Plaintiff's statements concerning his pain and its impact on his ability to work are not entirely credible because they are inconsistent with: (1) the objective findings in the medical evidence that relates to the time period from onset of disability to last insured date; and (2) Plaintiff's own testimony regarding his daily life activities. (R. 19, 21). Those two components of the ALJ's analysis are discussed in more detail below.

### 1. Objective Findings in the Medical Evidence

The ALJ's opinion demonstrates his thorough inventory of the medical evidence of record, which led to his appropriate determination that Plaintiff's pain complaints are not consistent with the objective evidence. Mindful of the Eleventh Circuit's pronouncement that medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged, *Holt*, 921 F.2d at 1223, it is significant that the record includes only a *single* x-ray from the relevant time period of covered quarters. (R. 93-94). Although the x-ray diagnosed mild asbestosis, the ALJ correctly noted that "[t]here is not a shred of medical evidence

establishing any functional limitation relating to [Plaintiff's] asbestos exposure." (R. 21).[3] In any event, as is apparent from Plaintiff's arguments to this court, asbestosis was not the cause of Plaintiff's primary disability symptoms of neck and back pain.

As to those complaints of disabling back and neck pain, the record is devoid of any objective evidence to support his allegations. Indeed, there are no imaging studies, laboratory tests, or other types of objective evidence from the relevant time period that would support an underlying medical reason for such pain. When a magnetic resonance imaging of the lumbar spine was completed in September 2003, almost two years after the Plaintiff's insured status expired, it revealed only a left paracentral disc bulge and no disc herniation or stenosis. (R.155). Thus, in the absence of any test results or other objective data that demonstrate the existence of an underlying medical condition causing Plaintiff's pain,[4] the court must look to other diagnostic sources, such as notes from doctors who treated Plaintiff's conditions.

---

[3] As the ALJ observed, Plaintiff's smoking habit at that time of one and one-half packs of cigarettes belied any allegations of a serious breathing problem. (R. 19, 241).

[4] Although Plaintiff concedes that the court must consider whether he was under a disability at any time prior to the expiration of his coverage on December 31, 2001, (Doc. # 7, at 4), he nonetheless argues that a *January 20, 2005* post-myelogram CT of the cervical spine - conducted four years after the relevant time period - provides "**confirmatory evidence** of objective evidence that would support the subjective complaints (and diagnoses) that existed in June 2001, and again in December 2001." (Doc. # 7, at 6)(emphasis in original). There is simply no legal or logical basis for Plaintiff's contention that a diagnostic test conducted in January 2005 somehow proves that Plaintiff was disabled four years earlier.

Moreover, a cervical spine MRI conducted on September 19, 2003, two years after the expiration of his covered quarters and two years before the January 2005 CT, further erodes Plaintiff's suggestion that the record contains "confirmatory evidence" of pre-December 2001 disability. Indeed, the 2003 MRI paints quite a different picture from the 2005 test as it showed only large posterior soft tissue neck lipema with no evidence of disc herniation, canal stenosis, or nerve impingement. (R. 166).

9

Although pain management specialist Dr. Odeanne Connor documented her treatment of Plaintiff during the relevant time period of covered quarters, her notes do not support a finding of disability prior to December 31, 2001. For example, in June 2001, Dr. Connor observed that Plaintiff had normal range of motion in his upper extremities (except the shoulders, which were within functional limits) and functional range of motion in his lower extremities. (R. 147). Although Dr. Connor observed the presence of pain at trigger points in August 2001, by December 2001, Dr. Connor reported muscle strength at 5/5 in all four extremities despite tenderness to palpation in the lumbosacral spine. (R. 152-33). Essentially, although Dr. Connor's notes reflect consistent reports of pain from Plaintiff, she generally found him to have at least functional range of motion. These and other observations from Dr. Connor support the ALJ's decision to discount Plaintiff's pain complaints.[5]

The dearth of medical evidence from the period of coverage, combined with the lack of support for Plaintiff's complaints in what limited relevant evidence is available, leads this court to conclude that the ALJ correctly discounted Plaintiff's subjective complaints because "[t]his record does not establish the existence of a severe medically determined abnormality of the cervical or lumbar spine before December 3[1], 2001." (R. 21). *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (reasoning that ALJ properly doubted claimant's allegations of disabling pain where

---

[5] Although Plaintiff highlights the ALJ's request at the hearing for more information about Dr. Connor's qualifications (Doc. # 7, at 7), there is simply no indication from the ALJ's opinion that Dr. Connor's qualifications played any role when weighting her treatment opinions. Moreover, although Plaintiff also submitted additional records after the hearing related to Dr. Pascual Herrera's treatment of his back and neck pain during the period from Fall 2000 until Spring 2001, (R. 257), the ALJ properly found that these records do not change the analysis of Plaintiff's subjective complaints (R. 21).

there were "no clinical findings indicative of a back impairment of the degree of severity described by [the claimant]").

### 2. Evidence Regarding Daily Life Activities

Further support for the ALJ's decision to discount Plaintiff's subjective complaints is found in Plaintiff's own account of his daily life activities. (R. 21). Plaintiff reported to the Commissioner that he typically is able to wash clothes, cook supper, mail bills, and look after his dog. (R. 70-80). Although he does not vacuum, do yard work, or shop, Plaintiff is able to watch his grandchildren and take care of his personal needs. (R. 70-80). While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record). Indeed, the Eleventh Circuit has affirmed adverse credibility findings based on evidence of ability to perform daily activities such as those present in this case. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)(affirming adverse credibility finding in light of claimant's ability to drive, provide childcare, bathe, care for herself, and perform housework); *Graham v. Apfel*, 129 F.3d 1420, 1421-22 (11th Cir. 1997)(reasoning that activities such as child care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work).

Accordingly, the court finds that Plaintiff's testimony regarding his daily life activities, especially when considered in combination with the objective medical evidence of record, supports

11

the ALJ's finding that Plaintiff's subjective complaints are not entirely credible. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989)(finding that where, as here, the ALJ specifically articulates at least three reasons for rejecting the claimant's subjective complaints of pain, the ALJ properly discredited Plaintiff's testimony).

Moreover, as outlined below, the ALJ conducted a comprehensive examination of the records of Plaintiff's physicians and individualized assessment of the strength thereof, which further bolsters his rejection of Plaintiff's accounts of disabling pain and his finding of no disability.

### B.   Weight Accorded to the Opinions of Plaintiff's Physicians

According to Plaintiff, the ALJ's improper evaluation of the opinions of his physicians led to his erroneous finding that Plaintiff's musculoskeletal condition and depression were not "severe" impairments during the relevant time period. Specifically, Plaintiff contends that the ALJ should not have discounted "the opinions of treating pain management physician, Dr. Odeanne Connor and consultative psychologist David Wilson." (Doc. # 7, at 4). To the contrary, the court finds that the ALJ applied proper legal standards when weighting the opinions of Plaintiff's doctors, and his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion

may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440. In this case, the ALJ appropriately considered both physicians' opinions.

### 1.     Pain Management Specialist Dr. Odeanne Connor

With respect to the opinions offered by pain management specialist Dr. Connor, the court finds that the ALJ thoroughly analyzed the evidence pertaining to her treatment. It is clear from Dr. Connor's notes for the seven-month period of time relevant to this case[6] (R. 147-154), that she relied solely on Plaintiff's subjective complaints to make her diagnoses of low back pain, cervical spine pain with radiculopathy, myofascial pain syndrome, cephalgia, and left elbow bursitis. Indeed, the records from Dr. Connor during that time period are completely devoid of any imagining studies, laboratory tests, nerve conduction studies, or any other objective evidence that would support an underlying medical reason for Plaintiff's allegation of severe pain – despite his consistent allegations of pain ranking "8" on a scale of "10." (R. 20, 147-154).

In this Circuit, pain is not an impairment – it is a symptom. Thus, allegations of pain alone cannot establish disability. As noted earlier, medical signs and laboratory findings must be present

---

[6] Plaintiff's first visit with Dr. Connor after his April 30, 2001 alleged onset of disability was on May 9, 2001. From that date until his date of last insured on December 31, 2001, Plaintiff visited Dr. Connor regularly every thirty days.

13

to show a medical impairment that could reasonably be expected to produce the symptomatic pain alleged. *Holt*, 921 F.2d at 1223. No such evidence exists in this case. Dr. Connor's opinions regarding Plaintiff's condition were based primarily - if not entirely - on his subjective presentation rather than any objective findings, and thus the ALJ properly discounted Dr. Connor's opinions. (R. 20). *See Crawford v. Barnhart*, 363 F.3d 1155, 1159 (11th Cir. 2004) (reasoning that ALJ properly rejected the opinion of a treating physician "based primarily on Crawford's subjective complaints of pain").

Although the ALJ's opinion should have - and did - take into account Dr. Connor's observations regarding Plaintiff's condition when making his disability determination, it was entirely appropriate for the ALJ to give "little weight" to her conclusory assertion that Plaintiff is "definitely permanently disabled." (R. 21, 150). It is axiomatic that although an ALJ can consider opinions from acceptable medical sources on such issues as a claimant's RFC and whether a claimant is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996). Thus, the ALJ was not required to consider Dr. Connor's comment on the ultimate issue of disability.

### 2. Consultative Psychologist David Wilson

Plaintiff also claims that the ALJ should have relied more heavily on the opinion of consultative psychologist Dr. Wilson when determining whether his depression was a "severe" impairment. (Doc. # 7, at 8-9). At the request of the ALJ, Plaintiff was psychologically evaluated by Dr. David Wilson on October 2, 2006. (R. 262-70). Although Dr. Wilson found that Plaintiff's cognitive difficulties could be evidence of depression that impairs his ability to work, (R. 270), that opinion was formed from an evaluation conducted over five years after the expiration of his covered

quarters and is not helpful to the ALJ's analysis of disability during the relevant time period. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (finding that evaluation conducted eight months after expiration of insured status was "minimally probative"). Likewise, Dr. Wilson's hindsight observation of Plaintiff's depression - "[b]ased on his self-report, it is possible that he has been depressed since 1996 . . . . This cannot be known for sure" - is not probative of disability because it is hypothetical and inconclusive. (R. 270). Thus, the ALJ appropriately determined that neither of those opinions by Dr. Wilson - one diagnosing Plaintiff's current psychological condition and one hypothesizing about Plaintiff's prior psychological condition - was relevant to the disability analysis. (R. 21, 262-70).

Any evidence of depression during the relevant time period prior to Plaintiff's last insured date is scarce. Indeed, Dr. Connor's observation in June 2001 that Plaintiff "admits to irritability and depression as well as decreased sleep, physical activity and concentration," (R. 240), and Dr. Herrera's 2000 prescription of certain anti-depressant medications (R.257) are the only references to a mental condition. These observations alone are simply not sufficient to establish that medically defined depression existed, much less was a "severe" impairment under the Act. Thus, the ALJ lacked sufficient evidence of diminished mental capacity or any mental limitations or restrictions to take into consideration when considering Plaintiff's capacity for work, and it was appropriate for him to find that Plaintiff was not disabled for this reason.

## VI. Conclusion

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this

determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this 15th day of Sept, 2008.

JAMES H. HANCOCK
UNITED STATES DISTRICT JUDGE